IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TERRY M. SCATES, JR.

    Plaintiff,

v.                                                      No. 1:11-CV-1247

OBION COUNTY, TENNESSEE, *et. al.*,

    Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff, Terry Scates, brings this 42 U.S.C. § 1983 action against Defendants, Obion County, Tennessee, Jerry Vastbinder, Dennis Dean, Renea Terrell, and Shelly McKnight, for indifference to his medical needs while in the custody of the Obion County (Tennessee) Jail. Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking dismissal of all claims against them. For the following reasons, Defendants' motion is GRANTED.

I. FACTUAL BACKGROUND

On August 24, 2010, Scates was involved in an altercation with another inmate and sustained an injury to his face. He was seen by McKnight, a licensed practical nurse, who stitched Plaintiff's nose and lip and offered him icepacks and anti-inflammatory medication, which he refused. (Statement of Undisputed Material Facts, D.E. 66-2, ¶¶ 21.) The next day, Scates was seen by McKnight for a follow-up visit and Terrell, a certified family nurse practitioner, referred him to an independent x-ray service so that an x-ray could be taken of his

1

face. (Id. at ¶¶ 23-24.)  Dr. James C. King, III, an independent radiologist read the x-ray and determined that Plaintiff had no acute facial fractures. (Id. at ¶ 25.)

On August 30, 2010, Plaintiff made a complaint using an inmate medical request form indicating that his gums were ripped. (Id. at ¶ 26.) On September 1, 2010, Terrell visited with Scates, examined his mouth, and reported that there was no obvious ripping of Plaintiff's gum line. (Id.) Scates was prescribed an antibiotic to prevent infection. (Id.) On September 2, 2010, Plaintiff filed a second complaint that he was experiencing jaw pain. He was provided a response that an x-ray had already been taken and that no facial fractures had been found. (Id. at ¶ 27.) On September 7, 2010 Plaintiff again submitted a complaint using the jail kiosk that he wanted a second opinion concerning his injury. (Id. at ¶ 28.) On September 8, 2010, Terrell and McKnight visited with Scates, examined his jaw line, and noted that there was no visible swelling and that the jaw bone was stable. (Id.) On September 13, 2010, Plaintiff used the jail kiosk to request a dentist appointment because he was having problems chewing. (Id.) McKnight met with Scates and was informed that Plaintiff had not been taking his prescribed medication. (Id. at ¶ 29.) McKnight notified Scates that he could not visit with a dentist until he began taking his medicine due to a risk of infection. (Id.)  On both September 15th and 16th, 2010, Plaintiff entered a medical complaint that his face was disfigured and that his mouth was not closing properly. (Id. at ¶ 30.) On September 22, 2010, Terrell inspected Scates and was able to pull out his lower jaw bone without moving his entire head. (Id. at ¶ 31.) Meanwhile, corrections officers informed Vastbinder and Dean of Plaintiff's medical complaints. (Id. at ¶ 33.) Based on these claims and Terrell's September 22, 2010 visit with Scates, Plaintiff was referred to Dr. Franklin W. Clark, a dentist. (Id. at ¶ 34.) Dr. Clark met with Scates on September 29, 2010, performed a second x-ray, and diagnosed Plaintiff with a broken jaw. (Id. at ¶ 35.)

Based on this finding, Plaintiff was scheduled for corrective jaw surgery with Dr. Michael Bobo. (Id. at ¶ 36.) Dr. Bobo was chosen because he was the nearest maxo-facial oral surgeon. (Id.) The surgery was performed on October 6, 2010, the first available date for Dr. Bobo. (Id.) Scates was escorted to and from surgery by Dean. (Id.) On October 6, 2010, Obion County purchased a blender, 48 cans of vanilla Ensure and straws for Plaintiff's post surgery meals. (Id. at ¶ 37.) Plaintiff was provided these blenderized and liquid meals following his operation. (Id.) Scates has not alleged any further complications or negative effects. (Id. at ¶ 16.)

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedures states that, upon a motion of a party, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). When the motion is properly supported by proof, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. The nonmoving party must provide the court with more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). A party may not oppose a summary judgment motion by sole reliance on the pleadings, but must provide "concrete evidence supporting [his] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989); see Celotex, 477 U.S. at 324.

"A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." Pucci v. Nineteenth Dist. Court, 628 F.3d 752, 759 (6th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If the party who bears the burden of proof at trial fails to make a showing sufficient to establish an element necessary to his case, entry of summary judgment is appropriate. Poss v. Morris (In re Morris), 260 F.3d 654, 665 (6th Cir. 2001) (quoting Celotex, 477 U.S. at 322). "[O]n summary judgment the inferences to be drawn from the underlying facts… must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587.

Here, Plaintiff failed to respond to the Defendants' statement of undisputed material facts. Local Rule 56(d) states that "[f]ailure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." L.R. 56.1(d), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. Therefore, for the purpose of ruling on this motion, the Court accepts the facts contained in Defendants' statement of material facts as being uncontested by Scates. See Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007) ("Because the Plaintiffs have failed to respond as provided by the Local Rules, this Court will consider the Defendant's statement of undisputed material facts as having been admitted by the Plaintiffs.").

III. ANALYSIS

Scates alleges that he was denied or delayed adequate medical attention, and/or provided inadequate medical treatment in violation of his Eighth Amendment rights. "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation and citation omitted). Prisoners may raise this cause of action against medical staff or other prison personnel who intentionally deny or delay access to medical care or intentionally interfere with treatment once it is prescribed. Id. at 104-105. In order to succeed on an Eighth Amendment claim, a party must satisfy both an objective and subjective element.

Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). First, he must prove that the deprivation of medical treatment is "sufficiently serious." Id. The Sixth Circuit has found that this element may be satisfied when the prisoner establishes that "the medical *need* at issue is sufficiently serious." Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 896 (6th Cir. 2005). A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." Id. at 898. A prisoner may also establish a sufficiently serious medical need, even when it is not obvious to a layman, by providing verifying medical evidence "to establish the detrimental effect of the delay in medical treatment." Napier v. Madison Cnty., 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component of the claim requires that prison officials had "a sufficiently culpable state of mind in denying medical care." Blackmore, 390 F.3d at 895 (quoting Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000)). In order for a constitutional violation to arise, prison officials must have a "deliberate indifference to serious medical needs" of the prisoner. Estelle, 429 U.S. at 104. Negligence on the part of prison official is not enough to create a constitutional violation; "[i]t is only such indifference that can offend 'evolving standards of decency'" which provides the basis for an Eighth Amendment claim. Id. at 106.

Here, Scates has failed to show that his medical need was sufficiently serious. While his broken jaw surely caused him pain and discomfort, the extent of his injury was not obvious to a layperson. In Geeter ex rel. Estate of Geeter v. Shubert, No. 2:08-CV-44, 2008 WL 4562262 (W.D. Mich. Oct. 10, 2008), a prisoner died when a deep venous thrombosis resulted in a massive bilateral pulmonary thromboembolus. Id. at *3. In the weeks leading up to his death, the prisoner was seen numerous times by medical staff for symptoms such as headaches, sore back and legs, dizziness, and malaise. Id. None of the medical staff diagnosed this as a thrombosis. Id.

The Court held that because none of the medical personnel who examined him were able to identify this serious medical condition, there was no basis that a lay person would have been able to detect the prisoner's condition. Id. at *4. Additionally, because the prisoner was not able to provide medical evidence establishing that a delay in medical treatment caused him a detriment, he had not satisfied the objective element of his Eighth Amendment inadequate treatment claim. Id. at *5.

In the present case, Scates was seen numerous times for various complaints including ripped gums, jaw pain, and trouble closing his mouth. Each time Plaintiff filed a medical complaint, he received a response or visit by either Mcknight or Terrell. Additionally, an x-ray was taken of his jaw which a radiologist concluded showed no signs of acute fractures. It was not until a month after the altercation and his sixth visit with medical personnel that there was any evidence that his jaw was broken. At this point, he was seen by a dentist who performed a second x-ray and discovered a fracture in his jaw. As a result, Scates was scheduled for surgery on the earliest available date. Up until the sixth medical visit on September 22, 2010, McKnight and Terrell were unable to recognize the extent of the Plaintiff's injuries. It therefore follows that a lay person would not have been able to do so. Likewise, as soon as the severity of Plaintiff's injury became apparent, he received prompt corrective surgery. Additionally, Scates has provided no medical evidence to show that he suffered any complications or further medical issues following surgery. Accordingly, because his injury was not so obvious that a lay person would recognize the need for prompt medical attention, and as Plaintiff has proffered no medical evidence that he suffered a detriment due to a delay in treatment, he has not satisfied the objective element of his Eighth Amendment claim.

Furthermore, Scates has failed to establish that prison personnel acted with deliberate indifference to his medical needs. Consequently, he is unsuccessful in satisfying the subjective

element of his claim. Plaintiff was attended to by McKnight on the night he broke his jaw. An x-ray was taken the following day and a radiologist determined that Scates had not suffered an acute fracture. Plaintiff was seen by a nurse three more times and on none of these visits was there any indication that he had suffered such an injury. On the sixth medical visit, Scates was able to manipulate his jaw in a way that alerted medical personnel to the possibility that the jaw bone was broken and a dentist's appointment was scheduled. The second x-ray by the dentist revealed the existence of a jaw fracture. In response, surgery was undertaken after which Plaintiff received a liquid diet for a number of days.

Here, the facts establish that prison officials provided adequate attention, time, and thought to his treatment. While it is true that the first x-ray resulted in a misdiagnosis, this in and of itself is not a constitutional violation. "While a claim of inadequate treatment may state a claim if the treatment rendered is 'so woefully inadequate as to amount to no treatment at all,' Westlake v. Lucas, 537 F.2d 857, 860-61 (6th Cir. 1976), a federal court should be 'reluctant to second guess medical judgments where a prisoner has received some medical attention and the dispute concerns the adequacy of the treatment.'" Searcy v. Corr. Med. Servs., Inc., No. 1:07-CV-838, 2009 WL 910412, at *7 (W.D. Mich. Mar. 31, 2009) (quoting Clark v. Corrs. Corp. of America, 98 F. App'x 413, 416 (6th Cir. 2004)). As the Sixth Circuit has repeatedly held, inadequate treatment is not sufficient to establish deliberate indifference on the part of a medical provider. See, e.g., Broyles v. Corr. Med. Serv's., Inc., 478 F. App'x 971, 976 (6th Cir. 2012) (holding that a nurse was not liable for negligence in diagnosis or treatment when medical personnel failed to detect prisoner's detached retina); Clark, 98 F. App'x at 417-18 (finding that a prisoner failed to state a claim where he received some medical attention for a broken jaw and the dispute concerned the adequacy of his treatment). Accordingly, neither McKnight nor Terrell can be held liable for Scate's Eighth Amendment claims due to a misdiagnosis. Rather, in order

7

to succeed on his claim, Plaintiff would need to show that prison officials knew of a substantial risk of Plaintiff's health, "yet recklessly disregard[ed] the risk by failing to take reasonable measure to abate it." Taylor v. Boot, 58 F. App'x 125, 126 (6th Cir. 2003). As Scates has failed to establish this element, the subjective component as to McKnight and Terrell has not been satisfied.

Additionally, there are no facts suggesting that either Vastbinder or Dean knew of a substantial risk to Plaintiff's health and then recklessly disregarded this risk. Neither Defendant was apprised of the day to day medical treatment of prisoners. Grievances submitted through the jail kiosk system were not forwarded to either the Jail Captain or the Sheriff, even if complaints are directly addressed to them. After prison guards alerted Vastbinder, Dean, and Assistant Jail Administrator Will Sudbury of Plaintiff's medical complaints, the three met to discuss Scates' condition and agreed to send him to a dentist for further evaluation. The dentist determined that Plaintiff had been misdiagnosed, and as soon as the proper conclusion was reached, Vastbinder and Dean promptly scheduled Plaintiff for surgery. None of these facts show that these two Defendants knew of a substantial risk to Scates health or that they recklessly disregarded a risk or failed to take measures to abate it. Accordingly, Plaintiff has not satisfied the subjective element of his Eighth Amendment claims against Vastbinder and Dean.

Because the Court determines that Scates did not suffer a constitutional violation, the claims against Obion County are also dismissed. In Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the United States Supreme Court held that a municipality is only liable for a constitutional violation if it is established that the policy of the municipality was the cause of the alleged constitutional violation. See also Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997) ("[I]n order to state a claim against a city or county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional 'policy' or

'custom' of the municipality."). Here, the Court determined that there was no constitutional violation as Plaintiff has failed to establish that (1) he suffered from a sufficiently serious medical need and (2) prison officials acted with deliberate indifference as to his medical condition. Additionally, Scates has not alerted the Court to any Obion County policies or customs that resulted in his alleged injury. In fact, the Medical Service policy of the Obion County Jail clearly states that inmates will be provided necessary medical services as needed. Plaintiff was seen by medical personnel on numerous occasions, including nurses, a dentist, and an independent x-ray service. Scates has failed to direct the Court to any evidence supporting his contention that Obion County adhered to unconstitutional policies. Therefore, the claims against Obion County are dismissed.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds no genuine issue of material fact as to whether Defendants, Obion County, Dean, Vastbinder, McKnight, and Terrell, violated Plaintiff's Eighth Amendment rights. Thus, summary judgment is GRANTED and all claims against the Defendants are DISMISSED.

IT IS SO ORDERED this 8th day of July, 2013.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE